IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

JOSEPH H. FLEISCHLI                                                              PETITIONER
Reg. #12489-026

V.                                 NO.  2:09cv00079 JLH-JWC

T.C. OUTLAW, Warden,                                                          RESPONDENT
FCI, Forrest City, AR

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

   1.   Why the record made before the Magistrate Judge is inadequate.

   2.   Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

   3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## RECOMMENDED DISPOSITION

Joseph H. Fleischli, an inmate in the Federal Correctional Complex in Forrest City, Arkansas, brings this 28 U.S.C. § 2241 petition for writ of habeas corpus (doc. 1), challenging the decision of the Bureau of Prisons (BOP) to restrict him to approximately five months of placement in a residential reentry center (RRC) during the final portion of his prison term. Respondent filed a response (doc. 10), to which Petitioner replied (doc. 17). For the reasons that follow, the petition should be **denied**.

### I.

Petitioner is serving a 120-month prison sentence, followed by three years of supervised release, for six weapons convictions arising out of the United States District Court for the Central District of Illinois. *See United States v. Fleischli*, 305 F.3d 643 (7th Cir. 2002), *cert. denied*, 538 U.S. 1001 (2003). On December 9, 2008, a Second Chance Act-RRC Needs Assessment was completed by BOP staff, recommending RRC placement

of 150-180 days (doc. 10-2, at 5). The assessment shows a projected release date of May 13, 2010, and Petitioner says he currently is scheduled for RRC placement on December 15, 2009. He asserts that he applied for "the full twelve-month placement authorized by the Second Chance Act" and that he "communicated his reasons for needing [such] placement" to his case manager and to the unit team considering his placement (*id.* ¶¶ 5, 11). He says that, because he is sixty-eight years of age, has no home, no job, no money, no transportation, and no clothing or other necessities of life, he will require the maximum period of RRC placement authorized by the Second Chance Act to assist him in making a successful transition from incarceration to the community. He says the BOP failed to give him meaningful consideration for more than a six-month RRC placement and abused its discretion in making its placement determination. As relief, Petitioner asks this Court to direct the BOP to "forthwith consider [him] for placement in an RRC without delay" (*id.* at 6).

II.

Respondent first argues that Petitioner failed to exhaust his administrative remedies regarding the RRC issue. The federal writ of habeas corpus is "an extraordinary remedy" limited to "cases of special urgency." *Willis v. Ciccone*, 506 F.2d 1011, 1014 (8th Cir. 1974). In the context of challenges to the actions of prison authorities, this means that habeas relief can be available only after "administrative procedures which provide a real possibility for relief have been exhausted." *Id.* at 1014-15. Therefore, federal prisoners challenging the actions of the BOP are required to exhaust the BOP's administrative remedies before seeking judicial review through a § 2241 habeas petition. *Id.*; *see also*

*United States v. Chappel*, 208 F.3d 1069, 1069-70 (8th Cir. 2000).  The applicable regulations set forth a tiered administrative remedy process by which a federal prisoner may seek "review of an issue which relates to any aspect of his/her own confinement." 28 C.F.R. §§ 542.10(a), 542.13-542.15.  If, at any level of the administrative review process, the inmate does not receive a response within the time allotted for reply, then he may consider the absence of a response to be a denial at that level.  *Id.* § 542.18.

Petitioner contends that he utilized the BOP's administrative remedy process, but never received a written response to his BP-10 appeal to the Regional Director, although his case manager told him it was denied.  He says he then filed a BP-11 appeal, which the General Counsel declined to consider because there was no written response to the BP-10.  Petitioner asserts that he has thus exhausted his administrative remedies "to the best of his ability," and further efforts should not be required because he is "well into the final twelve-month period of his sentence" (doc. 1, ¶ 18; *see also* doc. 17, at 1-2).

The Court need not determine whether these circumstances excuse any further exhaustion because, as explained below, Petitioner's claim fails on the merits.  *See Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 927 (2008) (addressing merits of federal prisoner's claims despite alleged failure to exhaust administrative remedies because the "exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional"); *Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003) (prison officials' failure to timely respond to properly submitted grievance can show that prisoner has exhausted available administrative remedies).

III.

The BOP is authorized by statute to "designate the place of [a federal] prisoner's imprisonment," which may be "any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP] ... that the [BOP] determines to be appropriate and suitable." 18 U.S.C. § 3621(b). The statute further provides that the BOP may "at any time" direct the transfer of a prisoner from one penal or correctional facility to another. *Id.* In the course of exercising its discretion regarding a prisoner's housing designation or transfer, the BOP is to consider: (1) the resources of the available facilities; (2) the nature and circumstances of the prisoner's offense; (3) the history and characteristics of the prisoner; (4) statements and recommendations from the sentencing court; and (5) policy statements issued by the United States Sentencing Commission. *Id.* § 3621(b)(1)-(5).

The BOP is also required by statute to ensure, "to the extent practicable," that a prisoner spends "a portion" of the final months of his prison term ("not to exceed 12 months") under conditions that afford him a "reasonable opportunity" to prepare for reentry into the community. *Id.* § 3624(c)(1). These conditions "may include" a community correctional facility. *Id.* Placement must be considered in light of the factors set forth in § 3621(b), must be determined "on an individual basis," and must be of "sufficient duration to provide the greatest likelihood of reintegration into the community." *Id.* § 3624(c)(6). The statute further provides that "[n]othing in [§ 3624(c)] shall be construed to limit or restrict the authority" of the BOP under § 3621(b). *Id.* § 3624(c)(4). The listing of factors in § 3621(b) does not, however, preclude the BOP from considering other matters in its placement analysis. *Miller v. Whitehead*, 527 F.3d 752, 757-58 (8th Cir. 2008) (BOP

permitted to consider post-incarceration circumstances such as inmate's behavior in prison and capacity of facility to accept inmates into a particular program).

The Second Chance Act of 2007 extended the maximum transition period under § 3624(c)(1) from 180 days to its current limitation of twelve months. 18 U.S.C. § 3624(c)(1); Pub. L. No. 110-199, § 251, 122 Stat. 657, 692-93 (2008); *see Miller*, 527 F.3d at 756. The implementing regulations, promulgated October 21, 2008, state that inmates may be designated to community confinement, which includes RRCs, "as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months." 28 C.F.R. § 570.21(a); *see id.* § 570.20(a). The regulations also direct the BOP to designate inmates for such confinement in a manner consistent with § 3621(b), to make the determinations on an individual basis, and to designate a period "of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part." *Id.* § 570.22.

Read together, § 3621(b) and § 3624(c) vest the BOP with broad discretion in considering RRC placement, and nothing in the statutes, or any applicable case law, mandates that the BOP designate any inmate for RRC placement at any time, much less for the maximum twelve-month period provided by the Second Chance Act. The Eighth Circuit has "emphasize[d] ... that 18 U.S.C. § 3624(c) does not require placement" in an RRC; rather, "[i]t only obligates the BOP to facilitate the prisoner's transition from the prison system." *Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004). The BOP's obligation is qualified by phrases such as "to the extent practicable," "reasonable opportunity," and "sufficient duration," and nothing dictates how long the transition period must be or where it will be served. These are matters left to the discretion of the BOP, so long as it is an

individualized decision considering the statutory criteria. Moreover, although the BOP is required to consider requests for RRC placement "in good faith," the statute "does not require the BOP to provide prisoners with a detailed statutory analysis whenever a prisoner requests an immediate transfer to an RRC." *Miller*, 527 F.3d at 758.

Petitioner contends that, rather than considering him for twelve months of RRC placement under the Second Chance Act and taking into account the factors specified in § 3621(b), the BOP instead limited its consideration to six months in reliance on an April 14, 2008, BOP memorandum. According to Petitioner, this memorandum acknowledges that the Second Chance Act makes inmates eligible for twelve months of RRC placement but states that BOP "experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less" and that any recommended placement greater than six months requires written approval from the Regional Director (doc. 1, ¶¶ 9, 14). Petitioner contends that this memorandum "unlawfully constrained the discretion to designate [him] to an RRC for a duration that will provide the greatest likelihood of his successful reintegration into the community (*id.* ¶ 16).

In *Miller*, the Eighth Circuit alluded to this memorandum, referring to its language as "new BOP guidance issued in light of the Second Chance Act." *Miller*, 537 F.3d at 757 n.4. The Court stated that it did not understand the language to supersede an existing BOP program statement providing that RRC placement for a period longer than 180 days is "highly unusual," is possible only with "extraordinary justification," and requires the approval of the Regional Director. BOP PS 7310.04, at 8 (Dec. 16, 1998) (accessible at www.bop.gov/policy/progstat/7310.04.pdf). The Court further found that PS 7310.04's "extraordinary justification" language was not inconsistent with § 3621(b) and "reflects a

7

determination that *ordinarily* a placement of more than 180 days is not appropriate," but does not deprive a particular inmate of "an opportunity to show that in the individual circumstances of his case, a longer placement would be justified." *Miller*, 537 F.3d at 757-58.

The same conclusion applies to the similarly limiting language of the April 14, 2008 memorandum referenced by Petitioner. The memorandum's provisions that a six-month RRC placement is "usually" sufficient and that anything longer requires Regional Director approval do not displace the BOP's discretion under § 3621(b) and § 3624(c) to consider whether a particular inmate's individual circumstances justify longer placement. *See Stanko v. Rios*, No. 08-4991, 2009 WL 1303969, *5 (D. Minn. May 8, 2009) (because they supply "substantially identical" six-month thresholds, "[i]f the Program Statement does not violate the Second Chance Act, neither can the April 14 memorandum").

Here, as stated, Petitioner underwent a "Second Chance Act-RRC Needs Assessment" on December 9, 2008 (doc. 10-2, at 5). The assessment form shows that a number of factors were considered, including: (1) the nature and circumstances of Petitioner's criminal offenses (possession of a machine gun, possession of a firearm by a felon, illegal manufacture of a machine gun, possession of unregistered explosive devices); (2) his prior criminal history, including several juvenile convictions, and adult convictions for unlawful use of a weapon ("highly explosive compound PETN, military rockets, blasting machines") and theft; (3) his institutional record, including two incident reports (insolence to a staff member, and possessing an unauthorized item, with "[n]one since 2002") and "poor work evaluations," as well as completion of parenting, insurance and billiards classes, and work as an orderly; (4) the existence of family support; (5) his job skills, including

restaurant management, machinery, welding and boiler repair; (6) a "possible anger management problem;" and (7) the requirement by the sentencing court that he participate in a substance abuse program while on supervised release.

While the BOP's decision was brief, this record is sufficient to demonstrate that the BOP based Petitioner's RRC recommendation on legitimate factors individual to his situation, considering factors weighing both for and against extended RRC placement. Petitioner signed the assessment form, showing that he was aware of the factors considered, and he admittedly utilized the BOP's grievance system to protest the RRC placement decision. Furthermore, the assessment form does not mention the April 14, 2008 memorandum challenged by Petitioner, nor is there any indication in the record that it was referenced or relied upon at any step of the administrative review process.

Under these circumstances, Petitioner has not demonstrated that the BOP failed to comply with the applicable statutes or regulations in making its RRC determination or that the decision should be set aside as an abuse of discretion.

In an untimely reply[1] to Respondent's arguments for dismissal (doc. 17), Petitioner contends that the needs assessment completed by the BOP and relied upon in making its RRC recommendation contains incorrect and incomplete information, erroneously stating that he has health insurance, a residence, a driver's license, and a personal vehicle with insurance, and that no medications or ongoing treatment were required upon release

---

[1]Respondent's response was filed August 19, 2009, and served upon Petitioner (doc. 10). By order entered the same day, Petitioner was given until September 21, 2009, to file a reply and, on his motion, the deadline was extended to September 30 (docs. 8, 11, 14, 15). His reply was filed on October 8 (doc. 17), which was after this recommendation had been prepared but before submission to the District Judge.

from custody. He says that, in fact, he does not have health insurance and "will need time to pursue applications for Medicare and Social Security benefits," does not have a valid driver's license, does not own a vehicle or have vehicle insurance, and is currently being treated for high blood pressure, high cholesterol and gout. He also says the BOP failed to consider his "advanced age and his lack of resources upon release." He also says he was asked to sign the needs assessment form before it was completed. He requests a hearing to consider his claims.

The needs assessment form submitted here does not mention the allegedly erroneous information cited by Petitioner, and he submits no supplemental documentation to support his allegations. Attempting to resolve the factual discrepancy would only further delay this matter and likely render it moot, as he is currently about seven months from the end of his sentence and is fast approaching his contested RRC placement date of December 15.[2]  *See Elwood v. Sanders*, 152 Fed. Appx. 558 (8th Cir. 2005) (dismissing as moot because petitioner's release to community correction center made it impossible for the court to grant his requested relief).

Additionally, the Court fails to see how the information Petitioner cites – even if correctly presented to the BOP – would have altered the BOP's decision regarding the length of time he was to serve in an RRC. The particular matters set forth in Petitioner's reply appear to be of little relevance to the determination of an appropriate RRC period, and the Court does not see why any of them would mandate a period of more than six months. Presumably, Petitioner pointed out the "egregious" inaccuracies and "seriously

---

[2]The Court notes that, when Petitioner initiated this action on June 26, 2009, seeking 12 months of RRC placement, he was already 10 1/2 months from the end of his prison term.

flawed" assessment during the administrative review process, where they had no impact (*see* doc. 17, at 3-4).  The BOP would have been fully justified in determining those factors to be outweighed by the other factors against extended RRC placement.

IV.

For the foregoing reasons, this 28 U.S.C. § 2241 petition for writ of habeas corpus (doc. 1) should be **denied, dismissing this action in its entirety with prejudice**.  Also pending is Petitioner's motion for an order restraining the BOP from transferring him from his current location until the Court has ruled on his § 2241 petition (doc. 13).  In light of this recommendation, the motion should be **denied as moot**.

DATED this 9th day of October, 2009.

_____
UNITED STATES MAGISTRATE JUDGE